United States District Court
Southern District of Texas
**ENTERED**
May 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TYEST MORGAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1803 |
| | § | |
| GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are (1) a motion to dismiss filed by defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") (Dkt. 39); and (2) a motion to amend filed by plaintiff Tyest Morgan (Dkt. 43). Having considered the motions, related filings, and the applicable law, the court is of the opinion that the motion to dismiss (Dkt. 39) should be GRANTED and the motion to amend (Dkt. 43) should be DENIED.

**I. BACKGROUND**

Morgan filed this lawsuit to void and set aside a prior foreclosure sale, asserting that Wells Fargo and MERS have unlawfully transferred or assigned his mortgage note and deed of trust and that Wells Fargo therefore was not a real party in interest when it took foreclosure action on Morgan's property. Dkt. 38. The note and deed relate to property located at 6827 Renata Cir., Houston, Texas 77084 (the "Property"). *Id.* Morgan executed a promissory note and deed of trust naming First Magnus Financial Corporation as the lender and MERS as a nominee for the lender and lender's successors and assigns and naming MERS as a beneficiary on July 25, 2002. *Id.*; Dkt. 1-4. Effective July 28, 2009, MERS, as nominee for the lender and its successors and assigns, assigned

the note and deed of trust to Wells Fargo.  Dkt. 1-4.  Stephen C. Porter signed the assignment on August 28, 2009.  *Id.*  This document was also notarized.  *Id.*  On March 3, 2015, Wells Fargo purchased the Property at a foreclosure sale after Morgan defaulted on the obligations in the deed of trust.  Dkt. 1-5.  Morgan contends that the mortgagee at the time of the sale was US Bank and that US Bank did not have the power of sale based on any recorded assignment.  Dkt. 38.  Morgan also contends that the 2009 assignment was forged, causing the assignment to be void *ab initio*.  *Id.*

Morgan asserts the following causes of action against Wells Fargo and MERS: (1) lack of standing to foreclose; (2) lack of contractual standing to foreclose and breach of contract; (3) violations of the pre-sale provisions of the Texas Property Code; (4) violation of the Texas Debt Collection Act; (5) quiet title; and (6) declaratory relief.  *Id.*  He also seeks to file an amended complaint adding a cause of action for violating section 12.002 of the Texas Civil Practices and Remedies Code, which relates to filing a forged or fraudulent assignment of mortgage.  Dkt. 43.  Defendants oppose the motion for leave to amend, asserting that Morgan has failed to show good cause for an untimely amendment.  Dkt. 47.  Defendants additionally seek dismissal of all of Morgan's claims, arguing that most of Morgan's claims are based on the "show-me-the-note" or "split-the-note" theories and fail as a matter of law and that Morgan lacks standing to challenge the assignment or securitization of the loan.  Dkt. 39.

## II. LEGAL STANDARDS

### A.   Motion to Amend

Morgan moves to amend his complaint under Federal Rule of Civil Procedure 15(a)(2). Dkt. 43.  Generally, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, when a court sets a deadline for amendments pursuant to a

scheduling order and the deadline has passed, as is the case here,[1] courts in the Fifth Circuit apply Rule 16(b) to determine whether leave to amend should be granted. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). Under Rule 16(b), a scheduling order "may be modified only for good cause and with the Judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)). In determining whether good cause for amendment exists, courts consider the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (citations, quotations, and alterations omitted).

**B.    Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a

---

[1] The deadline to amend pleadings was October 26, 2015. Dkt. 32. Morgan filed his motion to amend on January 6, 2016. Dkt. 43.

3

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

### III. ANALYSIS

**A.     Motion to Amend**

Morgan seeks to add one additional cause of action that is related to the other claims in his current complaint. Dkt. 43. Specifically, he wishes to add a claim for a violation of the Texas Civil Practices and Remedies Code section 12.002, which, according to Morgan, prohibits filing a forged or fraudulent assignment of mortgage. *Id.*; *see* Tex. Civ. Prac. & Remedies Code § 12.002(a) (prohibiting the use of a document with "knowledge that the document or other record is a fraudulent court record or fraudulent lien or claim against real or personal property or an interest in real or personal property"). Morgan points out that his second amended complaint already alleges that the mortgage assignment was forged. Dkt. 43. Morgan claims that his counsel did not become aware of section 12.002 as a potential claim in this case until he saw an article in the *Houston Chronicle* on December 14, 2015, about a homeowner winning $5.4 million due to "robo-signing." *Id.* (citing Dkt. 43, Ex. 2 (Houston Chronicle article)). Morgan argues that this is his first request to amend the complaint with any substantive issues, as prior amendments just related to clarifying who the proper defendants should be. *Id.* Morgan asserts no prejudice can result in the delay of amendment because trial is over eight months away. *Id.*

Defendants argue that Morgan's explanation for failing to assert this claim earlier, that his counsel did not know about it until he saw an article about the statute in the *Houston Chronicle*, is

insufficient, as section 12.002 is not a new law. Dkt. 47. As far as prejudice, Defendants point out that they have already filed a motion to dismiss and that if the court allows the new claim, they will have to file another motion to dismiss that claim even if the current motion to dismiss is granted in its entirety. *Id.*

The court agrees with Defendants that Morgan has failed to show good cause for amending the complaint to add the section 12.002 claim. While the court has no reason to doubt that Morgan's counsel was unaware of the cause of action until he saw the *Houston Chronicle* article, the claim has been available for some time. Morgan has had sufficient time to perfect his complaint, as is evidenced by the fact that he has already filed two amendments. Moreover, considering the plain language of section 12.002 and the facts alleged in the complaint and its attachments, it does not appear that this would be a viable claim. Morgan's motion to amend is DENIED.

**B.     Motion to Dismiss**

    **1.     Standing to Foreclose**

Morgan's first cause of action is lack of standing to foreclose. Dkt. 38. Morgan asserts that Well Fargo did not have standing to foreclose because the assignment of the note and deed of trust from MERS is forged. *Id.* Morgan additionally contends that Wells Fargo did not have standing to foreclose because MERS was not acting for a valid party as nominee and the assignment fails to identify for whom MERS was acting as nominee. *Id.* Morgan alleges upon information and belief that the note was never validly transferred or assigned. *Id.* Morgan asserts that because MERS was not acting for First Magnus or a valid, documentable successor or assign of First Magnus and because the assignment fails to identify for whom MERS was acting, the 2009 assignment is void *ab initio*. *Id.*

5

Defendants move to dismiss this claim, arguing that under Texas law a mortgage service or mortgagee may foreclose under a deed of trust regardless of whether it is the holder or owner of the note. Dkt. 39. Defendants further argue that Morgan lacks standing to assert challenges to the MERS assignment to Wells Fargo because he is not a party to the assignment or a third-party beneficiary to that assignment. *Id.*

In *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249 (5th Cir. 2013), the Fifth Circuit addressed whether plaintiffs could rely on "show-me-the-note" and "split-the-note" theories to claim that a foreclosing defendant lacks standing to foreclose. The plaintiff in *Martins* argued that the assignment at issue split the note from the deed of trust and that the defendant could not foreclose without having been assigned both the note and deed of trust. 722 F.3d at 253. The court explained that under the show-me-the-note theory, plaintiffs attempting to avoid foreclosure assert that a party must be able to produce the original note to foreclose. *Id.* The court dismissed this theory as not viable because, under Texas law, one may prove the existence of a note via a photocopy and accompanying affidavit. *Id.* at 254. Plaintiffs attempting to avoid foreclosure who assert the split-the-note theory allege that a transfer of a deed of trust via MERS splits the note from the deed of trust and that both are thereafter void. *Id.* The Fifth Circuit, after much analysis, held that the "'split-the-note' theory is . . . inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself." *Id.* at 255. In *Martins*, the mortgage was assigned to MERS, and then MERS assigned it to the foreclosing party; the assignment in *Martins* included the power to foreclose by the deed of trust. *Id.*

In *Reinagel v. Deutsche Bank National Trust Company*, 735 F.3d 220 (5th Cir. 2013), the Fifth Circuit addressed two major issues that are relevant here: (1) whether a party has standing to

enforce assignments of security instruments by which the defendant has the right to foreclose; and (2) whether the defendant lacked authority to foreclose under the deed of trust when the signature on the assignment at issue was scanned and the signer had authorized the signature. 735 F.3d at 226–27. As to the first issue, the court noted that a non-party cannot enforce an assignment unless he or she is a third-party beneficiary or the assignment is void. *Id.* at 225. As to the second question, the court noted that, under Texas law, "acknowledgments are valid as long as they are made in the presence of the notary and meet certain other formalities . . . [and] there is no requirement that the affiant affix his signature in wet ink." *Id.* at 227.

Morgan contends that his complaint satisfies the *Reinagel* standard because he asserts that the assignment was void *ab initio* because it was not rendered by the signor or with authority from the signer Stephen C. Porter.[2] Dkt. 42. Defendants argue that Morgan's contentions relating to forgery are insufficient, relying on *Jemison v. Citimortgage, Inc.*, No. 13-2475, 2015 WL 251754 (S.D. Tex. Jan. 20, 2015) (Rosenthal, J.). In *Jemison*, Judge Rosenthal noted that a plaintiff asserting forgery must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b), and the plaintiff's conclusory allegations of forgery did not meet that standard. 2015 WL 254754, at *2. While the *Jemison* plaintiff incorporated copies of the assignments and endorsements that he claimed were forged, he did not explain the "who, what, when, where, and how" of the fraud. *Id.*

Here, likewise, there are no allegations of who forged Porter's signature or how or why a notary public attested that Porter signed the assignment. Under Federal Rule of Civil Procedure 9(b),

---

[2] Morgan notes that a Williamson County, Texas audit took issue with assignments purportedly signed by Stephen C. Porter that were backdated. Morgan notes that the audit is a public document, implicitly requesting that the court take judicial notice of the document. Defendants object to the unauthenticated document, which they contend contains hearsay and an improper legal opinion from a non-disclosed expert. Dkt. 46. The court agrees with Defendants that this audit report is outside of the pleadings and not properly considered at this stage of the litigation.

parties alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Morgan's allegations, like the *Jemison* plaintiff's, are too conclusory to meet the Rule 9(b) pleading standard. *See Kreway v. Countrywide Bank, FSB*, No. 15-50854, 2016 WL 2342717, at *1 (5th Cir. May 3, 2016) (per curiam) (finding that the plaintiff's complaint that a signature on an assignment was forged did not meet the Rule 9(b) pleading standard because the plaintiff "did not plead any facts relating to who perpetrated the alleged forgery or how, when, and where the alleged forgery was executed").

With regard to Morgan's contention that Wells Fargo did not have standing to foreclose because MERS was not acting for a valid party as nominee, Morgan argues that the assignment "absolutely fails to state for whom MERS was acting as 'nominee' in making the Assignment causing it to fail *ab initio* for lack of two identifiable real parties in interest." Dkt. 42.

The assignment states:

> Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS
> Assignee: WELLS FARGO BANK, N.A.

Dkt. 1-4. It appears that Morgan takes issue with the fact that the assignment states that MERS is acting as nominee for the "lender and lenders successors and assigns" rather than identifying the lender or lender's successor and assigns. *See* Dkt. 42. Defendants point out, however, that the deed of trust itself names MERS as the beneficiary of the deed of trust.[3] Dkt. 46. The deed of trust specifically states:

---

[3] Under Texas law, "it is not inconsistent for the deed of trust to label MERS both as 'nominee' and as a 'beneficiary.'" *Harris Cnty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 558 (5th Cir. 2015).

>Borrower understands and agrees that MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Dkt. 1-4. Thus, the deed of trust indicates that MERS could exercise the rights granted to the lender by the deed of trust. *See Svoboda v. Bank of Am., N.A.*, 964 F. Supp. 2d 659, 666 (W.D. Tex. 2013). Morgan agreed to this when he signed the deed of trust. There was no need to identify the lender in the assignment. The assignment is thus facially valid, and "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." *Reinagel*, 735 F.3d at 228.

  **2. Contractual Standing to Foreclose and Breach of Contract**

  Morgan's next cause of action, raised in the alternative, is lack of contractual standing to foreclose and breach of contract. Dkt. 38. Morgan asserts that he has performed under the deed of trust or is excused from performing. *Id.* Morgan asserts that Wells Fargo breached the contract (the deed of trust) when it appointed substitute trustees and sent notices of sale when it was not the "Lender" with power to conduct foreclosure activities under sections 22, 24, and 20 of the deed of trust. *Id.* Morgan contends Wells Fargo does not qualify as the "Lender" because the document assigning the deed of trust to Wells Fargo does not identify who MERS was acting on behalf of when it assigned the deed of trust. *Id.*

  Wells Fargo argues that this theory fails because it is based on the "show-me-the-note" or "split-the-note" theories. Dkt. 39. Additionally, Wells Fargo points out that Morgan cannot show that *he* performed under the deed of trust as his complaint does not dispute that he was in default on the loan. *Id.*

To maintain a breach of contract claim, Morgan must show that he performed under the deed of trust. *See Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (setting forth the elements of a breach of contract claim under Texas law, including performance by the plaintiff). He asserts conclusorily that "Plaintiff has performed under the contract, or if he has not performed, he is excused from this requirement since '[i]f the non-breaching party treats the contract as continuing after the breach, he is deprived of any excuse for terminating his own performance.'" Dkt. 38 (quoting *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.). This argument makes no sense. If Morgan did not perform, he would be the breaching party. In that case, Wells Fargo would be the non-breaching party. There are no allegations that Wells Fargo continued to perform after Morgan discontinued paying. And the fact that there was a foreclosure indicates that Morgan failed to pay. *See* Dkt. 1-5. Moreover, it is clear that this claim is based solely on Morgan's contentions regarding the assignment, and "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." *Reinagel*, 735 F.3d at 228.

### 3. Violations of the Texas Property Code

Morgan next alleges that Wells Fargo violated section 51.0025 of the Texas Property Code, asserting that, upon information and belief, there was not a valid agreement between the trustee and Wells Fargo to service Morgan's loan at the time of foreclosure. Dkt. 38. Wells Fargo contends that this claim is based on the "show-me-the-note" or "split-the-note" theories and fails as a matter of law. Dkt. 39. Additionally, Wells Fargo states that Morgan does not allege sufficient facts demonstrating that any violation of the Texas Property Code occurred. *Id.*

Under section 51.0025 of the Texas Property Code, a mortgage servicer may foreclose on behalf of a mortgagee if (1) the servicer and mortgagee entered into an agreement granting the

current servicer authority to service the mortgage; and (2) the notices of sale indicate that the servicer is representing the mortgagee under a servicing agreement and includes the name and address of the mortgagee and servicer. Tex. Prop. Code Ann. § 51.0025.

Morgan asserts that his contention that there was not a valid agreement between the trustee and Wells Fargo "makes perfect sense in light of the fact that there is an obvious fact question on who possessed actual standing to foreclose in this case." Dkt. 42. However, there is no fact question because the documents attached to the complaint indicate that MERS had authority to assign the deed of trust to Wells Fargo and did assign it to Wells Fargo. Morgan's Texas Property Code claim fails for the same reason his lack of standing to foreclose claim and breach of contract claim fail: "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." *Reinagel*, 735 F.3d at 228.

### 4. Violation of the Texas Debt Collection Practices Act

Morgan contends that Wells Fargo and MERS are "debt collectors" under Texas Debt Collection Act ("TDCA"), which is codified in the Texas Finance Code section 392.001 *et seq.*, because they engaged in the collection of a consumer debt with regard to Morgan's mortgage loan. Dkt. 38. Morgan contends that Wells Fargo breached the deed of trust when it foreclosed because it was not the "Lender" in the deed of trust and that MERS breached the deed of trust by attempting to transfer the note and deed of trust when it could not legally and validly act for First Magnus or any successor or assign of First Magnus. *Id.* Morgan argues that Wells Fargo's "prior breach" is a violation of the provisions in the TDCA prohibiting the use of any false representation or deceptive means to collect a debt and prohibiting the misrepresentation of the status or nature of services rendered. *Id.* Morgan again reiterates that the assignment fails because it does not identify for whom MERS is acting in its capacity as nominee for Magnus or its successors or assigns. *Id.* Finally,

Morgan argues that Defendants concealed the fact that the note and deed of trust were securitized, as well as the terms of the securitization agreements, and as such concealed that no single party would hold the note but that it would be included in a pool with other notes. *Id.*

Wells Fargo contends that this claim, including the securitization contentions, is based on the "show-me-the-note" or "split-the-note" theories that Wells Fargo had to hold the note to foreclose. Dkt. 39; *see Reinagel*, 735 F.3d at 228 (noting that even if the plaintiffs were third party beneficiaries to a pooling services agreement, "the fact that the assignments violated the [pooling services agreement]—a separate contract—would not render the assignments void, but merely entitle the [plaintiffs] to sue for breach of the [pooling services agreement]"); *Auriti v. Wells Fargo Bank, N.A.*, No. 3:12-cv-334, 2013 WL 24171832, at *9 (S.D. Tex. June 3, 2013) (Costa, J.) ("[E]ven those courts taking a more generous approach have held that plaintiffs cannot challenge a defendant's right to foreclose when the sole basis for the challenge is an alleged violation of a pooling and services agreement.").

Morgan argues that this is not a "show-me-the-note" or "split-the-note" claim and that he has properly pled a claim under the Texas Finance Code for lack of standing to foreclose. Dkt. 42. Morgan cites *Johnson v. Morrison Home Funding, LLC*, No. 4:14-cv-2549 (S.D. Tex. Aug. 6, 2015), in support of this argument. *Id.* In *Johnson*, Judge Hittner noted that one of the plaintiffs' claims was that the assignment fails to identify for whom MERS was acting in its capacity as nominee. *Johnson v. Morrison Home Funding, LLC*, No. 4:14-cv-2549, Dkt. 30 at 12. The specific subsections of the TDCA at issue in *Johnson* were § 392.304(a)(14), 392.304(a)(19). Subsection 14 precludes "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business." Tex. Fin. Code Ann. § 392.304(a)(14). Subsection 19 precludes "using any false representation or deceptive means to collect a debt or obtain information concerning

12

a consumer." *Id.* § 392.304(19). Judge Hittner determined that if all pleaded facts were true, the plaintiffs' claim for a violation of the TDCA was plausible. *Johnson*, Dkt. 30 at 12–13. *Johnson* was later dismissed after the parties filed a joint stipulation of dismissal. *See id.*, Dkts. 43–44.

Here, the court finds that, notwithstanding *Johnson*, Morgan has failed to state a claim for which relief can be granted under the TDCA. Morgan asserts claims, like the *Johnson* plaintiffs, under both subsections 14 and 19. He also alleges a claim under subsection 8, which prohibits "threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.304(a)(8); Dkt. 38. Presumably, with regard to section 8, Morgan is contending that threatening to foreclose when the assignment was invalid is threatening to take an action prohibited by law. However, MERS was authorized under the deed of trust to foreclose, and it assigned this right to Wells Fargo. Considering only the facts alleged in the second amended complaint and its attachments, Defendants thus did not threaten to take an action, as it relates Morgan, that was prohibited by law. With regard to subsections 14 and 19, the only allegations that could relate to alleged false representations are that Wells Fargo did not have authority to foreclose or that Morgan was not informed that the loan was securitized with a pooling agreement. The court finds that because Morgan does not have standing to challenge the assignment or validity of the securitization of his loan, his allegations that Wells Fargo and MERS violated these subsections of the TDCA fails. Moreover, to the extent Morgan alleges that Defendants violated the TDCA by not disclosing that the loan was securitized under a pooling services agreement, this is not actually a false representation because there is no indication that Defendants had a duty to disclose that the loan was securitized. *See Bernal v. Wilmington Fin.*, No. 3:12-cv-37410M, 2013 WL 2896892, at *5–6 (N.D. Tex. June 13, 2013); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 933 (N.D. Tex. 2014) ("For a statement to constitute

a misrepresentation under the TDCA, Defendants must have made a false or misleading *assertion*." (emphasis added)). Defendants' motion to dismiss the TDCA claim is GRANTED.

### 5. Quiet Title

Morgan's next claim is that none of the parties to the securitization transaction held a perfected and secured claim to the Property and that they should thus be permanently enjoined from asserting any adverse claim to Morgan's title to the Property. Dkt. 38. A suit to quiet title "relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). To succeed, "the plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove." *Id.*

Defendants argue that Morgan is requesting injunctive relief that effectively precludes his eviction from the Property and restores ownership of the Property to him. Dkt. 39. Defendants point out that under the *Rooker-Feldman* doctrine, the court cannot enjoin enforcement of a writ of possession issued by a state court. Dkt. 39 (citing *Knoles v. Wells Fargo Bank, N.A.*, 513 F. App'x 414 (5th Cir. 2013) (per curiam) and other cases); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983) (noting that federal district court "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional").

Morgan argues that the federal court issuing the opinions relied upon by Defendants "have mangled Texas law on quiet title." Dkt. 42. Morgan contends that a suit to quiet title is equitable in nature and enables the "'holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Id.* (quoting *Mortg. Elec. Registration*

14

*Sys., Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at *5 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied)). Morgan cites cases where parties have had standing to challenge a foreclosure sale, though none of the cases appear to be analogous to this case. *See* Dkt. 42 at 15.

Regardless, Morgan does not have standing to challenge the validity of the assignment, and the validity of the assignment is the basis for his equitable arguments. Defendants' motion to dismiss the quiet title claim is GRANTED. *Cf. Green v. Bank of Am, N.A.*, No. 13-1092, 2013 WL 2417916, at *1 (S.D. Tex. June 4, 2013) (Rosenthal, J.) (denying a request for a temporary restraining order to prevent eviction when the mortgage company had already foreclosed).

### 6. Declaratory Judgment

Morgan's final cause of action is for a declaratory judgment. Dkt. 38. He contends that pursuant to the loan, the underlying debt, the note, and the deed of trust, Defendants did not have authority to foreclose upon and sell the property, and request a judicial determination of the rights, obligations, and interests of the parties with regard to the Property. *Id.* The request is based on the same theories relating to alleged problems with the assignment and securitization. Since the affirmative claims based on these theories fail, the request for declaratory judgment necessarily fails. Defendants' motion to dismiss the declaratory judgment claim is GRANTED.

### IV. CONCLUSION

Defendants' motion to dismiss is GRANTED. Morgan's claims are DISMISSED WITH PREJUDICE. Morgan's motion to amend is DENIED. The court will enter a final judgment concurrently with this memorandum opinion and order.

Signed at Houston, Texas on May 31, 2016.

_____
Gray H. Miller
United States District Judge